CITY OF NORTH RIDGEVILLE, Appellee,

v.

REICHBAUM, Appellant.

[Cite as *N. Ridgeville v. Reichbaum* (1996), 112 Ohio App.3d 79.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 95CA006105.

Decided June 26, 1996.

80

*Scott Serazin*, North Ridgeville City Prosecutor, for appellee.

*Jack Bradley*, for appellant.

---

BAIRD, Judge.

Defendant-appellant, Martin Reichbaum, appeals his convictions for obstructing official business, in violation of North Ridgeville Ordinance 525.07(A), and resisting arrest, in violation of North Ridgeville Ordinance 525.09(A). We affirm.

The charges against the defendant stem from incidents occurring on August 27, 1994, after police officers were dispatched to the defendant's residence following a complaint of a disturbance. The defendant pleaded not guilty to the charges, and the matter proceeded to a jury trial.

Richard Neiman, a police officer for the city of North Ridgeville, testified that upon arrival at the defendant's residence he observed the defendant in the driveway and questioned him about the alleged disturbance. According to Officer Neiman, the defendant was agitated and upset but answered the questions.

Officer Neiman then entered the residence to question the defendant's stepdaughter Nicole and Nicole's grandmother. Before he could complete his questioning, Nicole, who was extremely upset, went outside to wait for a relative who was picking her up. Officer Neiman followed Nicole outside, where he observed another police officer, Sergeant Garrow, arrive. Sergeant Garrow approached the defendant, who was approximately ten to fifteen feet away from Officer Neiman and Nicole, and attempted to question him.

According to both officers, the defendant repeatedly interrupted Officer Neiman and Nicole. The defendant answered the questions that Officer Neiman posed to Nicole and repeatedly asked Officer Neiman why he was there, reminding Officer Neiman in an angry tone that the officer was on "his property" and that the house on that property was "his house." Officer Neiman testified that, at that point, he had not yet decided to arrest anyone and was still trying to obtain everyone's version of what had occurred. Officer Neiman did not recall specifically telling the defendant that the defendant was impeding the investigation.

Sergeant Garrow asked the defendant if they could step inside his house to discuss what took place so that Officer Neiman could question Nicole without interruption. The defendant refused and stated, "This is my property. You don't have the right to be here. I can go wherever I please." The defendant began walking in the direction of Officer Neiman, and Sergeant Garrow "had to step right in front of him."

According to Sergeant Garrow, he then tried to lead the defendant to an area where the defendant would not be able to see Nicole. The defendant refused to cooperate. Sergeant Garrow repeatedly asked the defendant to stop talking to Officer Neiman and Nicole and then asked the defendant for some identification. The defendant "stated he didn't have to give me no identification. And once again, he can do as he pleases. That we were on his property, and that we have no right to be there." According to Sergeant Garrow, he explained to the defendant that the officers were responding to a complaint of a disturbance and that they would have to find out what had happened before they could leave.

The defendant asked Sergeant Garrow if he would be placed under arrest if he refused to provide identification, and Sergeant Garrow told the defendant that he would arrest him in that event. According to Sergeant Garrow, he asked the defendant several times to calm down and tried repeatedly to separate the defendant from Nicole. Despite several warnings by Sergeant Garrow, the defendant continued to answer Officer Neiman's questions to Nicole and repeatedly yelled in Officer Neiman's direction.

When all of Sergeant Garrow's efforts to subdue the defendant were unsuccessful and the officers "were not able to investigate [the] complaint," Sergeant Garrow informed the defendant that he was under arrest for obstructing official business. He stated that no single incident prompted his arrest of the defendant and that he considered the "whole picture."

Sergeant Garrow then made several attempts to seize the defendant but was unsuccessful. Sergeant Garrow testified that the defendant refused to place his hands against the wall as instructed and that he and the defendant struggled for control. According to Officer Neiman, he became concerned for Sergeant

Garrow's safety and ceased his efforts to question Nicole in order to assist Sergeant Garrow. The officers repeatedly told the defendant to place his hands up against the wall or to place his hands behind his back. Each time, the defendant refused.

"OFFICER NEIMAN: He refused all times. I don't recall exactly how many times we asked him. It did come to a point that we did actually grab Mr. Reichbaum, spin him around away from us, and then handcuff him.

"PROSECUTOR: Did you ask him to perform any of these things before you had to physically do it?

"OFFICER NEIMAN: We asked him to place his hands on the wall. When he refused to do that, we grabbed hold of him, and we asked him to bring his arms behind his back to allow us to handcuff him.

"PROSECUTOR: And what did he do in regards to that request?

"OFFICER NEIMAN: He was yelling. I don't recall exactly what he was saying. Again, he was very upset. He had his arms clenched very tightly. Really, just a strong arm to prevent us from pulling his arm behind his back to allow us to handcuff him.

"PROSECUTOR: When were you able to handcuff him?

"OFFICER NEIMAN: I stepped in to Mr. Reichbaum's left. Sgt. Garrow was on his right-hand side. Both of us had hooked an arm. Using our weight we forced Mr. Reichbaum into the garage, the side wall, and then had brought his arms behind his back. We did have a little bit of a struggle to do that.

"PROSECUTOR: Why? Was he resisting?

"OFFICER NEIMAN: Yes. Absolutely."

Sergeant Garrow testified that he informed the defendant "four or five times" during this encounter that he was under arrest. However, the defendant continued to back away, "keeping that strong grip, not letting us get hold of his wrists to handcuff him." Finally, the defendant threw his wallet down to give the officers his identification, and the officers were able to handcuff him. Officer Neiman was never able to complete his investigation of Nicole, and the defendant never provided Sergeant Garrow with any information about the incident.

The defendant's eight-year-old daughter testified that the defendant was "minding his own business" on the night in question. She did not believe that the defendant had struggled with the police and did not recall whether the defendant had willingly put his hands behind his back. When the handcuffs were being put on the defendant, she only heard her father say, "You're breaking my thumb."

The defendant testified that he did not know at the time police arrived at his home that his mother-in-law had called the police. He testified that, when Officer Neiman arrived, the officer asked him, "What's going on? We got a call." According to the defendant, he answered, "Well, there's nothing happening," at which time Officer Neiman proceeded past him and into the house without asking him any further questions.

The defendant testified that he was "minding my own business, because nothing really happened." When Sergeant Garrow arrived, according to the defendant, he walked past Nicole and Officer Neiman and, without saying a word, grabbed the defendant by his arm and said, "You come down here." According to the defendant, Sergeant Garrow then began shoving him down the walk. The defendant told Sergeant Garrow that he was not doing anything wrong and that Sergeant Garrow had no right to put his hands on the defendant. According to the defendant, Sergeant Garrow then became "hostile" and demanded identification. The defendant testified that he merely asked whether he was being charged with a crime and whether he had done something wrong. In response, Sergeant Garrow said, "That's it. You're under arrest." According to the defendant, Sergeant Garrow then "smashed my face up against the garage."

According to the defendant, Officer Neiman then came over and grabbed him by the arm. One of the officers then began breaking his thumb. According to the defendant, he bent his arm down in order to avoid having his thumb broken. At that point, Sergeant Garrow said, "That's it. Resisting arrest. Now you're charged with resisting arrest." The defendant stated that he never intended to obstruct or delay the officers' investigation.

At the conclusion of the state's case and again at the close of all of the evidence, the defendant moved for an acquittal on both of the charges against him. The motions were overruled by the trial court. The jury returned verdicts of guilty on both charges.

The defendant filed a timely notice of appeal of his convictions and asserts a single assignment of error. The defendant argues that the trial court erred in overruling his motions for acquittal because (1) with respect to the charge of obstructing official business, (a) there was no evidence that the defendant *intentionally* hampered the officers' investigation of the disturbance, and (b) the defendant's failure to produce his driver's license was not an unprivileged act constituting obstruction of official business, and (2) with respect to the charge of resisting arrest, there was no evidence that the arrest was lawful because the arrest was based only upon the defendant's refusal to give the officers his identification, a legal act which cannot form the basis for an arrest.

Crim.R. 29(A) requires a trial court to enter a judgment of acquittal on an offense charged if the evidence is insufficient to sustain a conviction. Evidence is

sufficient if, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence presented by the state, if believed, "would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Id.*

The elements of a charge of obstructing official business, in violation of North Ridgeville Ordinance 525.07(a),[1] are the performance of an unprivileged act, with the purpose of preventing, obstructing, or delaying the performance by a public official of an authorized act within his official capacity, which hampers or impedes the public official in the performance of his lawful duties.

An affirmative act is required in order to support a finding that an individual was guilty of obstructing official business. *Hamilton v. Hamm* (1986), 33 Ohio App.3d 175, 176, 514 N.E.2d 942, 943–944. The defendant contends that the only affirmative act performed by him was his refusal to produce his driver's license immediately upon request. Because this court held in *State v. McCrone* (1989), 63 Ohio App.3d 831, 835, 580 N.E.2d 468, 471, that a refusal to produce identification upon request by a police officer is not a punishable act, the defendant maintains that he cannot have obstructed official business because his act was not unlawful.

The evidence of multiple affirmative acts by the defendant in this case, however, goes far beyond the single act of not producing identification that was reviewed in *McCrone*. Here, the defendant repeatedly answered the investigatory questions posed to Nicole and shouted so that Officer Neiman could not obtain Nicole's version of what had precipitated the disturbance call. Despite several warnings by Sergeant Garrow, the defendant continued in this course of conduct. The defendant resisted suggestions that he go into his house to be questioned and refused to be led to an area where he would be away from Nicole and Officer Neiman, despite being informed by Sergeant Garrow that an investigation of the complaint had to be conducted. Sergeant Garrow testified that he arrested the defendant only when he could not subdue him and when the complaint could not be investigated. Sergeant Garrow also stated that the "whole picture" and not any *single* act prompted the defendant's arrest. Officer Neiman was forced to cease his investigation when the defendant resisted efforts by Sergeant Garrow to subdue him.

---

1. North Ridgeville Ordinance 525.07(a), which contains the same language as R.C. 2921.31(A), is now designated North Ridgeville Ordinance 606.14(a).

Unlike the facts considered in *Garfield Hts. v. Simpson* (1992), 82 Ohio App.3d 286, 611 N.E.2d 892, the defendant here was informed of the reason the officers were on his property, that is, to investigate a disturbance; nonetheless, the defendant committed repeated overt acts to impede that investigation. There was sufficient evidence before the trial court of those multiple acts, and the defendant's knowledge as to the reason for the officers' presence, to overrule the defendant's motion for acquittal on the element of unprivileged acts.

With respect to the element of "purpose to obstruct," R.C. 2901.22(A) provides:

"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

Purpose can be established by circumstantial evidence and may be ascertained from the surrounding facts and circumstances of the case. *State v. Jenks, supra,* 61 Ohio St.3d 259, 574 N.E.2d 492; *State v. Shue* (1994), 97 Ohio App.3d 459, 466, 646 N.E.2d 1156, 1160.

Although the testimony of the defendant and his daughter conflicted with the testimony of the police officers as to the defendant's actions, there was sufficient evidence, when viewed in a light most favorable to the prosecution, from which a reasonable person could conclude that the defendant had acted with purpose to impede the officers' investigation of the disturbance complaint. Accordingly, the trial court did not err in overruling the defendant's motion for acquittal with respect to the charge of obstructing official business.

Similarly, the trial court did not err in overruling the defendant's motion for acquittal with respect to the charge of resisting arrest. The defendant's basis for claiming a right to an acquittal on the charge of resisting arrest was again premised upon his belief that he was arrested merely for failing to provide identification.

North Ridgeville Ordinance 525.09(a), which mirrors R.C. 2921.33(A), provides, "No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another." [2] A police officer may lawfully arrest an individual upon probable cause to believe that a crime has been committed. *United States v. Santana* (1976), 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300, 305; *State v. Marlow* (Feb. 28, 1996), Summit App. No. 17400, unreported, at 4, 1996 WL 84627.

---

2. North Ridgeville Ordinance 525.09(a) has been recodified as North Ridgeville Ordinance 606.16(a).

Viewing, in a light most favorable to the prosecution, the abundant evidence produced at trial that the defendant committed multiple acts which impeded the officers' investigation, it is clear that the officers had probable cause to arrest the defendant for obstructing official business.

The defendant's assignment of error is overruled.

*Judgment affirmed.*

QUILLIN, P.J., and SLABY, J., concur.