DECISION AND JUDGMENT ENTRY
Appellant Regine Neptune appeals her convictions for obstructing official business in violation of R.C. 2921.31 and resisting arrest in violation of R.C. 2921.33. She assigns the following errors:
 I. THE COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO SUPPRESS IN VIOLATION OF HER CONSTITUTIONAL RIGHTS.
 II. THE COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT[']S RULE 29 DISMISSAL AFTER THE STATE FAILED TO MAKE A PRIMA FASCIA [sic] CASE OF OBSTRUCTION OF JUSTICE OR RESISTING ARREST AND/OR THE JURY RETURNED A VERDICT THAT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE COURT ERRED WHEN IT GAVE INAPPROPRIATE JURY INSTRUCTIONS OVER THE OBJECTION OF DEFENDANT'S COUNSEL TO THE PREJUDICE OF DEFENDANT.
Finding no reversible error, we affirm the judgment of the trial court.
 I.
In November 1998, appellant was involved in a domestic dispute at the home of her ex-husband. Appellant was attempting to retrieve her children for visitation, but her ex-husband refused to allow the children to leave his home. The Athens County Sheriff's Department was summoned to the residence; however, appellant was not satisfied with their actions and eventually left without her children. Some time later that day, appellant began telephoning the Sheriff's Department and 911 in Athens County. Appellant made several demands for her children and apparently remained dissatisfied with the department's response. Appellant began making threats to her own life, including statements that she would cut herself and that there would be a "dead corpse" if she didn't get her children.
As a result of these telephone calls, several deputies were dispatched to appellant's residence. Sergeant Jeff Cottrill testified that when he arrived at appellant's home he could see appellant in the house with the telephone in her hand. He knocked on the front door and advised appellant that he was a member of the Sheriff's Department and that he needed to come in to talk with her and see if the matter could be resolved. Sgt. Cottrill testified that appellant refused to allow the deputies inside and appeared very irate and agitated. He testified that appellant was screaming and demanding that her children be brought to her immediately.
Sgt. Cottrill testified that the normal procedure when handling a suicidal person is to secure the individual as soon as possible and ensure that the person is safe from harming him or herself. Sgt. Cottrill testified that when appellant refused entry to the deputies, he sent two deputies to the back of the house to determine if there was another entrance in the event the situation escalated. The deputies informed Sgt. Cottrill that the rear door was closed but not locked.
As appellant was unresponsive to Sgt. Cottrill's requests to open the door, Deputy Zippert attempted to speak to appellant. Deputy Zippert advised Sgt. Cottrill that she saw a knife in appellant's hand. Sgt. Cottrill turned to the door and noticed that appellant was indeed waving a knife around. Sgt. Cottrill testified that appellant's agitation had escalated and he believed that entry was necessary to prevent appellant from harming herself. The deputies reasoned that because appellant was a surgeon, she would be more knowledgeable regarding methods to harm herself than most people.
While Deputy Zippert continued talking to appellant, Sgt. Cottrill, Deputy Winner and Deputy Maynard entered the residence through the rear, unlocked door. When the door was opened, an alarm sounded so the deputies hurried through the basement, up the stairs and into the kitchen with their guns drawn. Appellant was in the kitchen with a phone in one hand and a knife in the other. She began screaming and waving the knife around. Sgt. Cottrill testified that the deputies were within twenty feet of appellant. As the deputies approached appellant, Sgt. Cottrill holstered his weapon and took out his expandable baton. Deputy Winner also holstered his weapon and took out his mace.
The deputies repeatedly ordered appellant to put down the knife and appellant refused. Sgt. Cottrill testified that appellant appeared more agitated and tipped the blade of the knife towards the deputies. Sgt. Cottrill then struck the knife out of appellant's hand, causing the blade to break away from the handle. The deputies grabbed appellant and attempted to secure her. Sgt. Cottrill testified that appellant was kicking, screaming and thrashing around. At one point, appellant attempted to bite Sgt. Cottrill's arm and leg. Deputy Maynard informed appellant that she was under arrest. When appellant attempted to free herself from the deputies' grasp, Deputy Maynard used mace to subdue her.
Deputy Maynard testified to substantially the same events. He also testified that prior to arriving at appellant's home he heard portions of appellant's calls in which she threatened suicide. Deputy Maynard testified that he did not intend to arrest appellant prior to entering the house and that the decision to arrest was not made until appellant failed to comply with the officers' requests to put her hands behind her back.
Deputy Winner testified that he was the first to arrive at appellant's home and that when he approached the door, appellant stated that if Deputy Winner wanted to see appellant safe, he would bring her children. When Deputy Winner asked if she was saying that if her children weren't brought she would harm herself, appellant responded affirmatively.
Appellant testified in her case in chief. She stated that she attempted to retrieve her children from her ex-husband's home for court-ordered visitation. When her ex-husband refused her request, appellant asked the Sheriff's Department to assist her but they refused. After returning home to retrieve a copy of the court order, appellant contacted the Sheriff's Department again but she did not receive assistance. Appellant admitted making threats to harm herself on the 911 calls. However, she stated that she did not really intend to harm herself and only made the statements because she felt there was no other way to see her children.
Appellant testified that she had calmed down by the time the deputies arrived at her home. She testified that she informed the deputies that they could speak to her through the door but she would not allow them to enter. Appellant testified that she doesn't know why she had the knife; she saw it on the counter and picked it up.
Appellant testified that when the police entered her home, the alarm was sounding and her dog was barking which added to the confusion. Appellant further testified that she could not understand what the police were saying and simply put her arms up to protect herself from being shot. Appellant testified that Sgt. Cottrill knocked the phone, not the knife, from her hand. She could not recall if she dropped the knife. Appellant further testified that she did not try to bite anyone and was simply moving her head to breathe when she was maced. Appellant also testified that she was never told that she was under arrest.
The jury returned a guilty verdict on the charges of obstructing official business and resisting arrest. A timely appeal was filed.
 II.
In her first assignment of error, appellant argues that the trial court erred in denying her motion to suppress. In her motion to suppress, appellant argued that the warrantless entry into her home was unlawful and, therefore, appellant's arrest and all evidence recovered should be suppressed. The state contends that the police entry was lawful because of exigent circumstances. The state argues that the deputies entered because they feared that appellant would harm herself, not because they were attempting to arrest her.
When considering an appeal from a trial court's decision on a motion to suppress evidence, we are presented with a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. During the suppression hearing, the trial court assumes the role of trier of fact. State v.Rossiter (1993), 88 Ohio App.3d 162, 166. Accordingly, the trial court is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v.Brooks (1996), 75 Ohio St.3d 148, 154; State v. Mills (1992),62 Ohio St.3d 357, 366. As a reviewing court, we must defer to the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Medcalf
(1996), 111 Ohio App.3d 142, 145. We must then independently determine whether the trial court correctly applied the appropriate legal standard to the facts of the case. Ornelasv. United States (1996), 517 U.S. 690, 699, 116 S.Ct. 1657,134 L.Ed.2d 911; State v. Williams (1993), 86 Ohio App.3d 37,41.
The trial court issued neither written nor oral findings of fact when denying appellant's motion. Crim.R. 12(E) provides in pertinent part that "where factual issues are involved in determining a motion, the court shall state its essential findings on the record." However, findings pursuant to Crim.R. 12(E) are not necessary when the defendant does not request them and the record contains sufficient evidence to legally justify the court's decision. State v. Brown (1992),64 Ohio St.3d 476; State v. Howard (Mar. 4, 1994), Scioto App. No. 93CA2136, unreported. Therefore, we must determine whether the evidence in the record supports the trial court's denial of the suppression motion.
The Supreme Court in Payton v. New York (1980),445 U.S. 573, 586, 63 L.Ed.2d 639, 100 S.Ct. 1371, held, "as a basic principle of Fourth Amendment law, that searches and seizures inside a home without a warrant are presumptively unreasonable." The Supreme Court also stated that, "before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." Welsh v. Wisconsin (1984),466 U.S. 740, 753, 80 L.Ed.2d 732, 745, 104 S.Ct. 2091; Payton, supra.
An exception to the requirement that police officers obtain a warrant before conducting a search arises when officers are confronted with a situation which would lead a prudent and reasonable official to see a need to act to protect life. See Wayne v. United States (C.A.D.C. 1963),318 F.2d 205, 212. In Mincey v. Arizona (1978), 437 U.S. 385,392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300, the United States Supreme Court stated:
 We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. * * * The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.
Appellate courts in Ohio have relied on this rationale to uphold automobile stops and warrantless entries. Therefore, we turn to these cases for guidance.
In State v. Roach (1982), 8 Ohio App.3d 42, a gas station attendant summoned the police when he witnessed the defendant, in an apparent state of intoxication, lock himself into a restroom and remain there for approximately twenty-five minutes. When the officers arrived, they knocked on the door but received no response. They then "picked" the lock and discovered the defendant on the floor holding a substance later identified as methaqualone. Appellant moved to suppress the methaqualone but his motion was denied.
The Twelfth District Court of Appeals relied on Mincey,supra, and upheld the trial court's decision. Roach, supra, at 43. The court found that the police officers had reasonable cause to believe that an emergency situation existed and that the defendant was in need of immediate aid to protect his life. Id. Further, "[a]pplication of the exclusionary rule in the case would deter police officers from taking appropriate action in future emergency situations in order to protect individuals from possible drug overdose."Id. In conclusion, the court found that the Fourth Amendment and the exclusionary rule were inapplicable to this emergency situation. Id.
In State v. Oliver (1993), 91 Ohio App.3d 607, and Statev. Stubbs (Oct. 2, 1998), Montgomery App. No. 16907, unreported, the Ninth District Court of Appeals and the Second District Court of Appeals reached similar conclusions involving automobile stops. In Oliver, the defendant's friend contacted police and indicated that the defendant was threatening suicide, was distraught and somewhat intoxicated when he left her home. Oliver, supra, at 608-609. The caller also informed police that the defendant had two handguns at home. Id. at 609. The police observed the defendant's car and initiated a traffic stop during which a handgun was discovered. Id. The appellate court held that the police had reasonable cause to believe that the defendant was in need of immediate aid to protect his life. Id. at 610.
Likewise, we believe that the warrantless entry into appellant's home was justified by the circumstances. While one has greater constitutional protections in one's home than in one's car, the rationale for the exception is the same — to protect life. The police officers testified that they did not enter appellant's home in order to arrest her, but did so to protect appellant. Appellant was placed under arrest only after she pointed a knife at the deputies. While suicide is not a crime, police officers have a duty to prevent citizens from harming themselves and were performing this duty when they entered appellant's home. Based on the police officers' testimony, we conclude that the exigent circumstances were sufficient to justify the entry into appellant's home. Therefore, the trial court did not err in refusing to suppress evidence recovered from appellant's home or appellant's arrest. Appellant's first assignment of error is overruled.
 III.
In her second assignment of error, appellant asserts that the trial court erred in failing to grant her Rule 29 motion for acquittal after the state failed to make a prima facie case of obstruction of official business or resisting arrest. Appellant also claims that the jury returned a verdict that was against the manifest weight of the evidence. We disagree.
A Crim.R. 29(A) motion tests the sufficiency of the evidence presented at trial. See State v. Williams (1996),74 Ohio St.3d 569, 576; State v. Miley (1996), 114 Ohio App.3d 738,742. Crim.R. 29(A) allows a trial court to enter a judgment of acquittal when the state's evidence is insufficient to sustain a conviction.[1] The trial court may not grant a defendant's Crim.R. 29(A) motion, however, "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman
(1978), 55 Ohio St.2d 261, syllabus. In making this determination, the trial court must construe the evidence in a light most favorable to the prosecution. Id. at 263. An appellate court undertakes de novo review of the trial court's decision on a Crim.R. 29(A) motion and will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all the elements of the crime beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; see, also, Miley, supra, 114 Ohio App.3d at 742. If any rational trier of fact could have found the essential elements of an offense proven beyond a reasonable doubt, the appellate court will not disturb a conviction. Williams,74 Ohio St.3d at 576; Jenks, 61 Ohio St.3d at 273.
The elements of obstructing official business are delineated in R.C. 2921.31, which states that:
 (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties.
Appellant proffers several reasons why her conduct does not fall within the definition of "obstruction of official business." First, she argues that obstructing official business requires some affirmative physical "act" by a defendant and merely refusing to act cannot constitute obstruction. Next, appellant implicitly argues that because the police were acting outside their lawful duties and violating appellant's constitutional rights by entering her home, her conduct was privileged. Lastly, appellant argues that the state presented no evidence that appellant had any purpose to prevent or delay the deputies in the performance of their duties.
Initially, we note that facts such as these are highly unusual and, hopefully, unlikely to appear again before this Court. We also express our concern that the legislature did not intend for this statute to apply in cases such as this. However, we must consider the plain meaning of the statute and the facts before us in order to determine if appellant was wrongfully convicted of obstruction of official business.
We agree with appellant's statement of law that an affirmative act or statement is required in order to support a finding that an individual is guilty of obstructing official business. See N. Ridgeville v. Reichbaum (1996), 112 Ohio App.3d 79,84. Failure to obey a law enforcement officer's request is not obstruction. See, e.g., State v. Gillenwater (Mar. 27, 1998), Highland App. No. 97CA935, unreported; Garfield Hts. v. Simpson
(1992), 82 Ohio App.3d 286. Viewed in the light most favorable to the state, however, the evidence shows that appellant not only refused to comply with the deputies' orders to put the knife down, but pointed the knife towards the deputies while repeatedly stating "no." This evidence supports a finding that appellant performed an act and did not merely fail to obey the deputies' orders.
Appellant's second argument, that the deputies were acting unlawfully and in violation of her constitutional rights when they entered her home, is similarly without merit. As we discussed in appellant's first assignment of error, law enforcement officials have a duty to protect individuals from harm; the deputies did not violate appellant's constitutional rights by entering her home to perform this duty. Because they lawfully entered appellant's home, she was not privileged to use force against them.
Lastly, appellant argues that the state presented no evidence that she had any purpose to prevent or delay the deputies in the performance of their duties. R.C. 2901.22(A) provides:
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature. (Emphasis supplied.)
Purpose can be established by circumstantial evidence and may be ascertained from the surrounding facts and circumstances of the case. Jenks, supra.
Here, the deputies testified to the agitated state that appellant was in when they arrived at her home and when they confronted her in the kitchen. The testimony also showed that appellant stated "no" several times when told to drop the knife. This evidence is sufficient to support a finding that appellant intended to obstruct or delay the deputies in the performance of their official duties.
In sum, there was sufficient evidence to support appellant's conviction for obstruction of official business. The evidence, construed in favor of the state, shows that the police officers entered appellant's house intending to calm her down and provide her with mental health care, that appellant pointed a knife at the deputies and repeatedly stated "no" when asked to put the knife down, and that appellant performed these acts in order to prevent or delay the deputies in providing her with mental health care. Notwithstanding our concerns over the application of R.C.2921.31 to these facts, the trial court did not err in failing to grant appellant's Crim.R. 29 motion as to the obstructing official business charge.
Appellant also challenges the court's denial of her Crim.R. 29(A) motion on the resisting arrest charge. R.C.2921.33(A) provides that:.
 No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another.
Appellant asserts that the court erred in denying her motion as her arrest was unlawful. To prove a "lawful arrest," there must be "probable cause by the evidence of reasonable grounds for the arrest." State v. Maynard (1996), 110 Ohio App.3d 6,10. Pointing a knife at three deputies unquestionably constitutes probable cause to effectuate an arrest. The deputies also testified that appellant struggled with them and attempted to bite when she was placed under arrest, thereby resisting the arrest by using force. Therefore, the trial court did not err in denying appellant's Crim.R. 29(A) motion on the resisting arrest charge.
Appellant also argues that her conviction is not supported by the manifest weight of the evidence. While a "sufficiency" challenge tests whether a state's case is legally adequate to go to the jury, a "weight" of the evidence argument concerns the "rational persuasiveness" of the evidence and tests whether the evidence was enough to sustain the state's burden of proof. See State v. Thompkins (1997),78 Ohio St.3d 380, 386-387.
Our role in a manifest weight of the evidence inquiry is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180,193. To make this determination, we must "review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." State v. Stepp (1997), 117 Ohio App.3d 561,567. If the record contains substantial evidence upon which a trier of fact could conclude that the state proved its case beyond a reasonable doubt, we will not reverse a conviction.Getsy, supra, at 193-194; State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
Even though a manifest weight of the evidence challenge requires us to review the record and weigh the evidence, our review is tempered by the principle that questions of weight and credibility are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; State v. Garrow (1995), 103 Ohio App.3d 368, 371. In this case, the jury found the deputies to be credible witnesses and felt that appellant had obstructed the deputies in the performance of their duties and resisted when they arrested her. We refuse to second-guess a jury's determination of witnesses' credibility when the jury was able to observe the witnesses, firsthand. To do so on this record would be an inappropriate usurpation of the jury's role. We overrule the second assignment of error.
 IV.
In her third assignment of error, appellant asserts that the trial court erred when it gave inappropriate jury instructions. Generally, a trial court should give requested instructions "if they are a correct statement of the law applicable to the facts in the case." Murphy v. CarrolltonMfg. Co. (1991), 61 Ohio St.3d 585, 591. However, jury instructions must be viewed in their totality. Margroff v.Cornwell Quality Tools, Inc. (1991), 81 Ohio App.3d 174, 177;Yeager v. Riverside Methodist Hosp. (1985), 24 Ohio App.3d 54,55. If the totality of the instructions clearly and fairly express the law, a reviewing court should not reverse a judgment based upon an error in a portion of a charge.Kokitka v. Ford Motor Co. (1995), 73 Ohio St.3d 89, 93;Margroff at 177.
A strong presumption exists in favor of the propriety of jury instructions. Brooks v. Mihm (May 3, 1995), Pickaway App. No. 93CA24, unreported. Instructions which, in their totality, are sufficiently clear to permit the jury to understand the relevant law will not be the cause of a reversal on appeal. Margroff at 177; Burwell v. AmericanEdwards Labs. (1989), 62 Ohio App.3d 73, 79; Yeager at 55. Whether the jury instructions correctly state the law is a question of law which we review de novo. Murphy, supra, at 591.
Appellant argues that the trial court erred in giving the following instruction regarding the lawfulness of appellant's arrest:
 The issue of the validity of the arrest has been raised. Ohio law provides that the deputies shall arrest and detain any person where the deputies have probable cause to believe the person arrested is in the presence of the deputies and is recklessly causing inconvenience, annoyance, or alarm by engaging in threatening harm to persons or property or by engaging in violent or turbulent behavior or by creating a condition that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender. The standard is subjective. You must place yourself in the position of the deputies with their knowledge or lack of knowledge at the time.
 If you find that the foregoing condition existed, then Ohio law provides that the deputies were privileged to enter the residence and effect the arrest.
Appellant maintains that this instruction took the issue of the lawfulness of the arrest out of the jury's hands. Appellant also argues that the instruction, which essentially states that appellant was lawfully arrested if the jury finds that she violated the disorderly conduct statute,[2] is erroneous in that disorderly conduct is a minor misdemeanor which is not an arrestable offense. Appellant also asserts that, in response to a question from the jury regarding this instruction, the trial court erroneously instructed that "persons" at risk of physical harm could include appellant. Lastly, appellant asserts that the standard for determining disorderly conduct is objective, not subjective.
A trial court's error is harmless if, beyond a reasonable doubt, the error does not prejudice the party complaining of it. See, generally, Crim.R. 52; Chapman v. California (1967),386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824; State v. Sibert
(1994), 98 Ohio App.3d 412. Here, assuming the instruction is erroneous, we find that the error can only be harmless beyond a reasonable doubt.
Earlier in the jury instructions, the trial court stated that the jury could only find appellant guilty of resisting arrest if the arrest was lawful. The trial court stated that, "To commit the offense of resisting arrest the underlying arrest for obstructing official business, must have been lawful." The jury went on to find appellant guilty of obstructing official business. If the jury determined that there was enough evidence to convict appellant of obstruction of official business, they must also have found that there was probable cause for the deputies to arrest appellant for this charge regardless of whether they believed she committed disorderly conduct. Therefore, assuming the instruction and responses to questions regarding the instruction were erroneous, the error was harmless beyond a reasonable doubt.
Appellant also asserts that the trial court erred in submitting the instruction to the jury in writing as it was in a different form and print than the remaining instructions and, therefore, may have carried additional significance with the jury. We note, however, that the trial court instructed the jury to consider the jury instructions as a whole and not to single out any particular instruction. "A jury is presumed to follow the instructions given to it by the judge." Statev. Henderson (1988), 39 Ohio St.3d 24, 33, citing Parker v.Randolph (1979), 442 U.S. 62. As the jury was told to consider all the instructions and appellant has presented no evidence to show that the jury failed to follow this direction, we find appellant's argument to be unpersuasive.
Lastly, appellant argues that the trial court erred in telling the jury, in response to a question, that obstructing official business can be based on a verbal act alone and no physical act is needed. In State v. Lazzaro (1996), 76 Ohio St.3d 261,266, the Supreme Court of Ohio held that the making of an unsworn, false oral statement to a public official with the purpose of misleading, hampering or impeding the investigation of a crime is punishable conduct within the meaning of R.C. 2921.31(A), the obstruction of official business statute. In State v. Smith (1996), 108 Ohio App.3d 663, this Court held that true statements made to a police officer are not "acts" for purposes of obstruction of official business. In reaching this conclusion, this Court acknowledged that the term "act" as used in R.C. 2921.31(A) must be read to include true oral statements spoken boisterously. Id. at 668. The Court declined to take this approach, however, finding that such an interpretation would subject R.C. 2921.31(A) to charges of overbreadth. Id. at 669. This Court similarly declined to hold that a boisterously spoken comment, regardless of its veracity, could constitute an "act" for purposes of R.C. 2921.31(A). Id. We now reject this holding.
A conviction for obstructing official business is properly focused not on whether the act is oral or physical, or on whether the act involves true or false speech, but rather on the actor's conduct and the effect that conduct has on a public official. See id. at 670 (Harsha, J., dissenting). While we agree that one cannot be guilty of obstructing official business for merely failing to obey a police officer, verbally, interfering with an officer's performance of his duties is much different. We see no reason why the truthfulness of one's statement should have any bearing on one's guilt for obstruction of official business. Rather, in determining whether a violation of R.C. 2921.31
occurred, the jury should focus on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform his lawful duties. See State v. Foster
(Sept. 17, 1997), Seneca App. No. 13-97-09, unreported (holding that speech alone, even if truthful, can constitute obstruction of official business where defendant interferes with public official's duties). This interpretation is consistent with a plain reading of the statute, which does not require a physical act. Therefore, we overrule appellant's third assignment of error.
Having found no prejudicial error, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
KLINE, P.J.: Concurs in Judgment Only.
ABELE, J.: Concurs in Judgment and Opinion.
For the Court
 BY: _________________________ WILLIAM H. HARSHA, JUDGE
[1] Crim.R. 29(A) states:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
[2] R.C. 2917.11, the disorderly conduct statute, provides that:
 (A) No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following:
 (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;
* * *
 (5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes a finaljudgment entry and the time period for further appeal commences from thedate of filing with the clerk.