[Cite as *State v. Crawford*, 2025-Ohio-630.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 31220 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| PATRICIA CRAWFORD | STOW MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. 2024 CRB 00304 |

DECISION AND JOURNAL ENTRY

Dated: February 26, 2025

FLAGG LANZINGER, Presiding Judge

**{¶1}** Defendant-Appellant Patricia Crawford appeals her conviction in the Stow Municipal Court for obstructing official business. This Court affirms.

II.

**{¶2}** This matter involves Crawford's conduct during a police investigation to locate a missing juvenile. Following the incident, the Tallmadge Police Department charged Crawford with obstructing official business in violation of R.C. 2921.31(A), a misdemeanor of the second degree. The matter proceeded to a bench trial.

**{¶3}** At trial, the State presented testimony from Officer Ickes of the Tallmadge Police Department, and Crawford testified in her own defense. The State submitted the officer's body-camera footage as evidence.

## Officer Ickes' Testimony

{¶4} Officer Ickes testified he and another officer were dispatched to an address at the Saxon Village Apartments in Tallmadge, Ohio after the Akron Police Department sent the Tallmadge Police Department a request to check the address for a missing 14-year-old juvenile runaway. The Akron Police Department further requested that if the juvenile was located at the address, the Tallmadge Police Department remove her from the residence and either bring her back to her mother or make contact with the Akron Police Department. It is undisputed that Crawford lived at the address and the missing juvenile was Crawford's grandchild. It is also undisputed that Crawford did not have custody of the juvenile at the time of the incident.

{¶5} Officer Ickes testified that upon arrival at the address, he knocked on the door and Crawford answered. He stated he introduced himself and explained the situation to Crawford. He testified that Crawford's body language changed in a way that indicated to him the juvenile was within the apartment, but that she did not immediately tell the officers the juvenile was there. When Crawford did acknowledge the juvenile was inside, she told the officers they would have to arrest her to get to the juvenile. Officer Ickes estimated he was at the apartment about two minutes before he saw the juvenile.

{¶6} Officer Ickes stated that the juvenile eventually exited the apartment, and the officers were able to speak to her in the back of a cruiser to discuss options for moving forward. Officer Ickes testified that the juvenile's mother and a family friend were also on scene and discussing options. He further testified that during this time, Crawford "kept coming up to us talking, interfering with our investigation, kept talking over us, screaming at us. Several vulgarities throughout the interaction with [Crawford.]" Officer Ickes estimated that he and another officer ordered Crawford to return to her apartment six to eight times before she complied.

{¶7}    The officers were eventually able to convince the juvenile to leave willingly and agreed to allow the juvenile to retrieve her belongings from Crawford's apartment.  Officer Ickes testified that once the juvenile entered the apartment, Crawford followed her and "slammed the door and locked it" before the officers could enter.  Officer Ickes stated he knocked on the door a couple of times and that Crawford shouted several things from the other side of the door, including asking whether the officers had a warrant.  Officer Ickes testified that when Crawford did open the door to allow the officers to enter, he explained to her the severity of her conduct in hindering their investigation.  During cross-examination, Officer Ickes acknowledged that Crawford said, "I didn't know what was happening."

{¶8}    Officer Ickes stated that once inside the apartment, the officers continued to speak with the juvenile and again explain the situation.  However, during the conversation, Crawford continued to talk over the officers.  He stated that at first it was talking and asking questions about their purpose, but then Crawford got "agitated, upset, angry" and began yelling and cursing at the officers.  At one point, Crawford called 9-1-1 and asked for the Akron Police Department and Summit County to come to the scene.  Officer Ickes testified that during this conversation, the juvenile kicked off her shoes and took an aggressive stance, stating she was not going anywhere.  Officer Ickes estimated the incident in the apartment went on for about a half an hour.

{¶9}    Ultimately, the officers removed the juvenile from Crawford's apartment and placed her in a cruiser.  Officer Ickes testified that Crawford then came outside again and began yelling at the juvenile's mother and her companions.  Officer Ickes testified that he had to physically escort Crawford back to her apartment.

{¶10}   During Officer Ickes' testimony, the State played a portion of his body-camera footage from the incident, and the trial court admitted the footage as Exhibit A.  A review of the

recording shows the footage begins after the juvenile first exited Crawford's house and the officers are discussing options for moving forward. The footage corroborates Officer Ickes' testimony.

{¶11} Officer Ickes testified that he ultimately charged Crawford with obstructing official business because "[s]he delayed and hindered [the] investigation of a missing juvenile, also a runaway juvenile. She agitated the other parties on scene; the officers, the juvenile, and quite frankly, all the residents of Saxon Village." He stated that the charge was not based on one specific incident, but on her conduct as a whole.

Crawford's Testimony

{¶12} Crawford testified in her own defense. Crawford stated it is common for the juvenile to run away and come to her house. Crawford testified that she believes the juvenile's mother is harming her and admitted she "was very emotional" during the incident. During her testimony, Crawford claimed she "was given permission to take [the juvenile] back to Tallmadge," but during cross-examination acknowledged she did not inform the juvenile's mother that she had done so.

{¶13} Crawford testified that she closed her apartment door after the juvenile entered because she had just been discharged from the hospital and she had to stay isolated due to her immune system. However, during cross-examination she stated that she did not see the officers walking behind the juvenile and that she had no idea who was knocking on her door.

{¶14} Crawford testified that it was not her goal to hinder or obstruct the officers from taking the juvenile into custody and that her goal was that the juvenile "not be returned to her mother." She also stated that she has always been respectful to the police and that she felt disrespected that day and was scared for her grandchild.

Trial Court's Decision

{¶15}  Following the trial, the lower court issued an Order and Decision on Bench Trial filed June 12, 2024, wherein the trial court found Crawford made several affirmative acts that disrupted or hindered the officers in their duty to return the juvenile to her legal guardian.  First, the trial court found Crawford took affirmative action by not telling officers the juvenile was in Crawford's apartment and, after acknowledging the juvenile was in her apartment, stated that officers would have to arrest her to get to the juvenile.  The trial court reasoned that these affirmative acts delayed officers in returning the juvenile to her mother.  Second, the trial court found Crawford took an affirmative action when she shut and locked the door on officers in an attempt to hinder their progress and their lawful duties.  The trial court reasoned that despite the short amount of time the door was locked, this action disrupted and hindered the officer's in conducting their investigation.

{¶16}  The trial court thereafter held a sentencing hearing and sentenced Crawford to 90 days in jail, with 60 days suspended.  In lieu of jail time, the trial court ordered Crawford to serve 30 days of electronic-monitoring house arrest.  The trial court also ordered Crawford to pay a $750.00 fine plus court costs and suspended $550.00 of the fine on condition that Crawford obey all laws for two years.

{¶17}  Crawford subsequently filed this timely appeal, raising one assignment of error for our review.  The trial court stayed Crawford's sentence pending appeal.

II.

**THE JUDGE'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND PREJUDICIAL AGAINST DEFENDANT-APPELLANT.**

**{¶18}** In her sole assignment of error, Crawford asserts that the trial court's verdict finding her guilty of obstructing official business is against the manifest weight of the evidence presented. We disagree.

**{¶19}** When considering a challenge to the manifest weight of the evidence, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.).

**{¶20}** R.C. 2921.31(A) governs obstructing official business and provides,

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

"A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Purpose can be established by circumstantial evidence and may be ascertained from the surrounding facts and circumstances." *State v. Moss*, 2018-Ohio-4747, ¶ 7 (9th Dist.), quoting *North Ridgeville v. Reichbaum*, 112 Ohio App.3d 79, 85 (9th Dist. 1996). "Law enforcement officers are considered public officials." *State v. Zupancic*, 2021-Ohio-1448, ¶ 7 (9th Dist.), citing R.C. 2921.01(A).

**{¶21}** This Court has held that "[a]n affirmative act is required in order to support a finding that an individual was guilty of obstructing official business." *State v. Harris*, 2015-Ohio-

5378, ¶ 7 (9th Dist.), quoting *Reichbaum* at 84. Although the mere failure to obey a law enforcement officer's request may not amount to obstruction, "failing to comply with an officer's order may constitute obstruction under some circumstances." *State v. Keagle*, 2019-Ohio-3975, ¶ 21 (9th Dist.). "[A] suspect may indeed obstruct official business when [she] creates a significant delay by ignoring an officer's repeated orders, thereby impeding the officer's ability to perform his lawful duties." *Moss* at ¶ 12, citing *State v. Woodson*, 2008-Ohio-1469, ¶ 27 (9th Dist.). "Rather than viewing the suspect's actions in isolation, the total course of [her] conduct must be considered." *Moss* at ¶ 12, citing *State v. Overholt*, 1999 WL 635717, *1-2 (9th Dist. Aug. 18, 1999).

{¶22} On appeal, Crawford asserts that "[i]n reviewing the record and the testimony of the witnesses, this Honorable Court of Appeals will find a multitude of evidence refuting the allegations of obstructing official business by Ms. Crawford which give rise to an error of 'manifest weight of the evidence.'" However, Crawford does not point to any evidence that weighs against her conviction nor does she develop her argument any further. *See* App.R. 16(A)(7). When an appellant fails to develop an argument in support of her assignment of error, this Court will not create one for her. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 1998 WL 224934, *8 (9th Dist. May 6, 1998). "If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone* at *8.

{¶23} Notwithstanding Crawford's failure to create an argument in support of her appeal, this Court has reviewed the entire record. Upon review, we cannot say that this is the exceptional case where the trier of fact clearly lost its way and created a manifest miscarriage of justice. *See Otten*, 33 Ohio App.3d at 340. The trial court could have reasonably concluded that Crawford's conduct as a whole, including but not limited to her locking the door of her apartment on officers,

was done purposefully with the intent to delay and/or hinder the officers in their ability to perform their lawful duties.

**{¶24}** Crawford's sole assignment of error is overruled.

III.

**{¶25}** Crawford's sole assignment of error is overruled. The judgment of the Stow Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

CARR, J.
SUTTON, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

CHRISTOPHER ROBERSON, Attorney at Law, for Appellant.

MEGAN E. RABER, Director of Law, and MELODY L. BRIAND, Assistant Director of Law, for Appellee.