DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Arthur Charles ("Charles"), appeals from the decision of the Avon Lake Municipal Court. This Court affirms.
 I. {¶ 2} On the evening of December 21, 2005, Avon Lake Police Officer Tom Anadiotis ("Anadiotis") observed Charles on the property of the Tomko auto dealership. When Anadiotis asked Charles his name and inquired as to why he was on the property after the dealership was closed, Charles responded with *Page 2 
profanity. Charles did not answer Anadiotis' questions. After getting several vulgar responses from Charles, Anadiotis called the police station for back up.
 {¶ 3} Anadiotis attempted to place Charles under arrest, but was unable to do so due to Charles' large size and because Charles was flailing his arm. Charles then walked away from Anadiotis. When the additional officers arrived on the scene, Charles was arrested. After his arrest, the Avon Lake police contacted the Nord Center about his mental health. Charles was examined and it was determined that he was mentally ill. He was transferred to Community Health Partners hospital in Lorain, Ohio.
 {¶ 4} On December 27, 2005, a complaint was filed, charging Charles with one count of disorderly conduct, a fourth degree misdemeanor, in violation of R.C. 2917.11, one count of obstructing official business, a second degree misdemeanor, in violation of R.C. 2921.31, and one count of resisting arrest, a second degree misdemeanor, in violation of R.C.2921.33. Charles pled not guilty to these charges. The case proceeded to a bench trial on August 17, 2006. At the conclusion of the trial, the trial court found Charles not guilty of resisting arrest and not guilty of disorderly conduct persisting, under R.C. 2917.11. Charles was found guilty of obstruction of official business and guilty of the lesser-included disorderly conduct under R.C. 2917.11(A)(5), a minor misdemeanor. Charles was fined $250 plus court costs on the obstruction of official business charge, with jail time deferred conditioned upon one year of good behavior, follow-up treatment *Page 3 
with a physician and compliance with the physician's orders. On the disorderly conduct charge, Charles received a $150 fine, which was suspended conditioned upon one year of good behavior, follow-up treatment with a physician and compliance with the physician's orders. The condition of good behavior for both charges was to run concurrent. Charles timely appealed from the decision, raising four assignments of error for our review. We have combined his assigned errors for ease of our review.
 II. ASSIGNMENT OF ERROR I "THE VERDICT OF THE COURT FINDING [CHARLES] GUILTY OF OBSTRUCTING OFFICIAL BUSINESS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF [CHARLES'] RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16
OF THE OHIO CONSTITUTION."
 ASSIGNMENT OF ERROR II "THE EVIDENCE WAS INSUFFICIENT TO FIND [CHARLES] GUILTY OF OBSTRUCTING OFFICIAL BUSINESS, IN VIOLATION OF [CHARLES'] RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16
OF THE OHIO CONSTITUTION."
 ASSIGNMENT OF ERROR III "THE VERDICT OF THE COURT FINDING [CHARLES] GUILTY OF DISORDERLY CONDUCT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF [CHARLES'] RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO *Page 4 
THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16
OF THE OHIO CONSTITUTION."
 ASSIGNMENT OF ERROR IV "THE EVIDENCE WAS INSUFFICIENT TO FIND [CHARLES] GUILTY OF DISORDERLY CONDUCT, IN VIOLATION OF [CHARLES'] RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."
 {¶ 5} In his four assignments of error, Charles argues that insufficient evidence was produced to support the trial court's verdict and that his convictions for obstructing official business and disorderly conduct were against the manifest weight of the evidence. This Court disagrees.
 {¶ 6} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates "that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 7} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley *Page 5 
(Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v.Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 8} Therefore, we will address Charles' claim that his convictions were against the manifest weight of the evidence first, as it is dispositive of his claim of insufficiency.
 {¶ 9} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 10} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 11} The City offered the testimony of Officers Anadiotis and Sean Rinker ("Rinker"). Charles did not offer any testimony.
 {¶ 12} Anadiotis testified that on the evening of December 21, 2005, he was on patrol in Avon Lake. He explained that as he drove past the Tomko dealership, *Page 6 
he "observed a lone male standing on the west side of the building. He was not near any new cars. He was near a bay door." According to Anadiotis, this was a concern because there had been four instances of theft at the Tomko dealership, including the theft of tires, rims and headlight covers since July of 2005. The last instance of theft occurred less than a month before. Anadiotis testified that he "decided to make contact with the male just to ascertain why he was on the property at that time." As Anadiotis approached and greeted him, the man used an expletive and called Anadiotis a "rookie." Anadiotis testified that he repeatedly requested the man's identification, but the man either refused or responded with vulgar language. At that point Anadiotis requested backup. While awaiting backup, Anadiotis continued to try to identify the man and find out why he was on the Tomko property. According to Anadiotis, the man became irritated, which led Anadiotis, in the interest of his own safety, to request that the man place his hands on the patrol car. The man refused and started "walking towards me in an aggressive manner, and at that point, I backed up and I expanded my police baton." Anadiotis testified that Charles was approximately 6'3 tall and weighed 275 pounds. He then identified Charles in court.
 {¶ 13} Anadiotis further testified that he again ordered Charles to place his hands on the hood of the patrol car, and Charles complied. Anadiotis attempted to place Charles under arrest for obstructing official business, but because of his heavy winter coat and large size, Anadiotis could not gain control of him. *Page 7 
Anadiotis testified that Charles was minimally struggling. He explained that he was "flailing his left arm." According to Anadiotis, Charles threatened to hurt him with his police baton if Anadiotis used the baton on Charles. Anadiotis testified that Charles attempted to walk away twice, once before he attempted to put him under arrest and once afterward.
 "After he made that threat towards me, he began to walk away. He walked towards the rear of the business. I followed him from a distance because I knew backup was on the way. He was walking between parked cars at the rear of Tomko attempting to open the cars. They were locked. He also was turning the door handle to the business trying to gain entry into the business, but those doors were locked, too."
According to Anadiotis, Officer Rinker arrived as backup and Charles walked out from between two cars and was arrested.
 {¶ 14} On cross-examination, Anadiotis explained that he believed Charles' behavior was "odd," and that he was mumbling. He testified that at the time he called for backup, Charles had made no verbal threats nor had he approached him in a menacing fashion. In fact, Anadiotis did not attempt to place Charles under arrest until after Charles approached him in an aggressive fashion.
 {¶ 15} He further testified that Charles' left arm could have been flailing as an effort to catch himself from falling over. Further, Anadiotis testified that after Charles was arrested, he refused to get into the police cruiser. After repeated requests, he entered the vehicle. At the police station, Charles was either unable or refused to answer processing questions and could not follow basic instructions. *Page 8 
When asked about his behavior at the police station, Anadiotis testified that "at one point [Charles] thought things were crawling on the floor." Due to these issues, Anadiotis testified, the police contacted The Nord Center. The Nord Center sent a representative to the police department to examine Charles. Anadiotis testified that the representative concluded that Charles was mentally ill subject to hospitalization. Based on this assessment Charles was transported to Community Health Partners. Anadiotis testified that "[t]he majority of the instructions that we did issue to him, he didn't react to them."
 {¶ 16} On redirect examination, Anadiotis explained that after Charles began to walk away from him at the Tomko dealership, he turned around and walked towards him in an aggressive manner with clenched fists. He further testified that he was unable to maintain control of Charles to arrest him. When asked by the trial court judge as to what prompted him to tell Charles that if he approached him he would hit him with his baton, Anadiotis testified that "his actions prior to that, his size, I didn't wanna get into a one-on-one physical confrontation with him because up to that point, he was not 100 percent compliant with my orders."
 {¶ 17} Officer Rinker also testified for the City. Rinker testified that he responded to the Tomko dealership on December 21, 2005. Rinker testified that Charles "[w]as highly agitated, lot of profanity, very disrespectful." The City then rested its case. *Page 9 
 Obstructing Official Business
 {¶ 18} Charles was convicted of obstructing official business, in violation of R.C. 2921.31, which provides:
 "(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 19} We first note that Charles appears to argue that Anadiotis' questioning of him on December 21, 2005 did not amount to a lawful investigatory stop and therefore Charles' had no obligation to respond to his questions. We find that Charles has forfeited any argument regarding the legality of the stop by failing to raise it below.North Ridgeville v. Elliott, 9th Dist. Nos. 05CA008686, 05CA008687,2006-Ohio-3332, at ¶ 8, citing State v. McDonald (Apr. 24, 2001), 5th Dist. No. 2000-CA-51, at *2-3.
 {¶ 20} Charles raises several arguments with regard to the elements of the obstruction of official business charge, which we will address in turn.
Mens Rea
 {¶ 21} Charles first argues that he did not act with purpose to prevent, obstruct, or delay Anadiotis at the scene. He contends that
 "[t]he evidence presented by the prosecutor's key witness demonstrated that Mr. Charles did not necessarily understand specific requests or instructions of the officer at the scene, and Charles immediately thereafter was assessed as mentally ill and transported to a mental health facility." *Page 10 
We do not agree with his conclusion.
 {¶ 22} When the disputed issue is the culpable mental state, such as intent, the trial court must often rely on circumstantial evidence because direct evidence will rarely be available. State v. Lott (1990),51 Ohio St.3d 160, 168. Accordingly, the City may rely on circumstantial evidence to prove an essential element of an offense, as "[circumstantial evidence and direct evidence inherently possess the same probative value[.]" State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. In reaching its conclusion, the trial court must weigh all the evidence, circumstantial or direct, against the standard of proof of beyond a reasonable doubt. Id. at 272.
 {¶ 23} Next, we recognize "that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." (Citation and quotations omitted.) Lott, 51 Ohio St.3d at 168. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. Id., citing Hurt v. Charles J. RogersTransp. Co. (1955), 164 Ohio St. 329, 334.
 {¶ 24} It appears that Charles is arguing that because he was assessed as mentally ill he could not have formed the requisite intent to support a conviction of obstruction of justice. Initially, we note that Charles did not enter a not guilty by reason of insanity plea below. Had he raised this affirmative defense, he would have borne the burden of proving that his mental illness was so severe as to negate the purpose element of the charge. State v. Taylor, 98 Ohio St.3d 27,2002-Ohio-7017, *Page 11 
at ¶ 64, citing R.C. 2901.05(A); R.C. 2901.01(A)(14). In the instant case, Charles did not argue the affirmative defense below.
 {¶ 25} We read Charles' argument on appeal to be one of diminished capacity. The Ohio Supreme Court has stated that "[t]he partial defense of diminished capacity is not recognized in Ohio." State v. Wilcox
(1982), 70 Ohio St.2d 182, at paragraph one of the syllabus. InWilcox, the defendant had raised the affirmative defense of not guilty by reason of insanity. In its opinion, the Court allowed expert testimony as to the defendant's not guilty by reason of insanity plea, but rejected other expert testimony tending to support a claim of diminished capacity. We followed this holding in State v. Smith (Mar. 7, 2001), 9th Dist. No. 00CA007644. In that case we reiterated that diminished capacity is not a defense under Ohio law. Id. at fn. 1.
 {¶ 26} We find that, despite the mental illness assessment, the trial court could find that Charles was acting with purpose on the night in question. Anadiotis testified that Charles threatened him in response to Anadiotis' statement that if Charles approached him, he would use his baton. Charles' threat was in direct response to Anadiotis' statement. Clearly, he understood Anadiotis' questions and statements to him and in response, threatened Anadiotis with bodily harm. Charles was acting with a purpose, i.e., to threaten Anadiotis. This threat, in conjunction with other acts that we will discuss below, impeded Anadiotis' purpose for questioning Charles. Armed with the knowledge that the Tomko *Page 12 
property had recently been the victim of several thefts, Anadiotis' purpose and duty as an officer was to determine why Charles was on the Tomko property after it had closed, in an area where he clearly was not looking at the cars for purchase.
 {¶ 27} Finally, with respect to Charles' contention that Anadiotis' testimony demonstrated that he did not necessarily understand specific requests or instructions, we point out that Anadiotis testified that Charles was either unable or refused to respond. Although he did initially testify that Charles could not respond to instructions given to him, he later clarified this statement by explaining that Charles simply did not react to the instructions given to him.
 {¶ 28} To this end, we find that the trial court did not err in determining that Charles acted with purpose.
An act that hampers or impedes a public office
 {¶ 29} Because Charles did not raise the issue below, we do not make any judgment here as to the legality of Anadiotis' initial questioning of Charles. As we have stated above, the failure to make these arguments below amounts to a forfeiture of the argument on appeal. As such, we will presume the questioning was valid.
 {¶ 30} Charles seems to argue that the only reason he was arrested was because he walked away from Anadiotis as he was questioning him. The testimony, however, reveals numerous other affirmative acts that impeded *Page 13 
Anadiotis in his investigation as to why Charles was on the Tomko property after it had closed, in an area where he clearly was not looking at the cars for purchase.
 {¶ 31} "Intent to impede may be found to be inherent in the affirmative words and actions" of Charles in response to Anadiotis.Akron v. Burns, 9th Dist. No. 21338, 2003-Ohio-3785, at ¶ 56. Again, "[t]he intent of an accused * * * must be gathered from the surrounding facts and circumstances[.]" State v. Hoffman (1936), 131 Ohio St. 27, paragraph four of the syllabus. See, also, State v. Treesh (2001),90 Ohio St.3d 460, 484-85. Contrary to Charles' position, he did not merely walk away from Anadiotis. Rather, the testimony revealed that upon questioning, Charles responded with vulgarity and insults. As he awaited backup, Anadiotis requested Charles put his hands on the patrol car. At this point, Anadiotis testified that Charles began "walking towards me in an aggressive manner" with clenched fists. We find that Anadiotis' testimony shows that Charles engaged in an affirmative act, i.e., approaching the officer as if to hurt him, that hampered or impeded Anadiotis' official duties.
 {¶ 32} Further, while attempting to arrest him, Charles made "flailing" motions with his left hand. While Charles implies that this flailing motion was to keep his balance, we note again that "several conclusions can be drawn from the same set of facts." Lott,51 Ohio St.3d at 168, citing Hurt, 164 Ohio St. at 334. This same "flailing" motion could also be seen as an affirmative act to impede arrest. *Page 14 
 {¶ 33} In light of the testimony, we cannot conclude that the trial court clearly lost its way when it found Charles guilty of obstruction of official business. As we have disposed of Charles' challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency. Roberts, supra, at *2.
Disorderly Conduct {¶ 34} Charles was convicted of disorderly conduct, in violation of R.C. 2917.11(A)(5), which provides:
 "No person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [c]reating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender."
 Mem Rea:
 {¶ 35} To find Charles guilty of disorderly conduct, the trial court had to find that he acted recklessly. Under R.C. 2901.22(C),
 "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 36} Charles first argues that due to his mental illness he could not have acted with heedless indifference to the consequences of his act. He uses the same argument here that we have disposed of above. He contends that because he was assessed mentally ill he could not form the culpable mental state. We do not agree with his contention that "[t]he evidence demonstrates that Charles may not have *Page 15 
understood the consequences of his conduct, therefore, he could not have acted with heedless indifference to those consequence." For the reasons discussed above with regard to purpose, we find that this argument lacks merit.
A condition that was physically offensive, or condition that wouldpresent a risk of physical harm to persons or property:
 {¶ 37} Charles argues that because he had not made a verbal threat and had not yet approached Anadiotis in a menacing fashion before Anadiotis called for backup, the guilty verdict was against the manifest weight of the evidence. This argument is without merit.
 {¶ 38} As we stated above, Anadiotis did not attempt to arrest Charles until after Charles made vulgar comments to him, insulted him, threatened him, and approached him in an aggressive manner with fists clenched. Charles makes much of the fact that many of these events occurred after Anadiotis called for backup, however, we find this to be of no legal consequence. As such, we do not find, as Charles argues, that "[t]he record is void of testimony relative to Charles causing a condition that would present a risk of physical harm to persons or property."
 {¶ 39} This Court has previously upheld a conviction for disorderly conduct where the complainant testified that the defendant had approached her while shaking his fists in a "`menacing' or `threatening' manner and making `unintelligible' noises." Cuyahoga Falls v.Bilder (Feb. 13, 2002), 9th Dist. No. *Page 16 
20795, at *1. Clearly, Anadiotis was alarmed by Charles' actions and feared for his physical safety. His testimony indicated that in concern for his own safety, he requested Charles put his hands on the roof of the patrol car. He further testified that he felt it necessary to draw his baton when Charles began to approach him aggressively. SeeElliott, supra, at ¶ 14. He also testified that upon trying to arrest him, Charles was "flailing" his left arm.
 {¶ 40} Accordingly, we find that the evidence supports Charles' conviction for disorderly conduct and therefore was not against the manifest weight of the evidence. As we have disposed of Charles' challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency. Roberts, supra, at *2.
 III. {¶ 41} Charles' assignments of error are overruled and the judgment of the Avon Lake Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal. We order that a special mandate issue out of this Court, directing the Avon Lake Municipal Court, County of Lorain, State of Ohio, to carry this judgment *Page 17 
into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 CARR, P. J. SLABY, J. CONCUR. *Page 1