[Cite as *State v. Johnson*, 2019-Ohio-3314.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

v.

STEPHANIE K. JOHNSON

    Appellant

C.A. Nos.     18CA0070-M
                18CA0071-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE Nos.    18CR0026
             18CR0070

DECISION AND JOURNAL ENTRY

Dated: August 19, 2019

TEODOSIO, Presiding Judge.

**{¶1}** Appellant, Stephanie K. Johnson, appeals from her convictions in the Medina County Court of Common Pleas. This Court affirms.

I.

**{¶2}** Following a domestic dispute on January 5, 2018, Ms. Johnson was arrested and transported to the Medina County Jail. Upon arrival at the jail, she had to be placed in a spit mask and restrained in a restraint chair. She managed to free her left leg from the restraint chair and kick a corrections officer in the head, injuring his ear and shattering his hearing aid. While incarcerated at the jail, she spit on two different corrections officers on January 6th and 10th.

**{¶3}** Ms. Johnson was charged in Case No. 18CR0026 with felonious assault. She was later charged in a supplemental indictment with harassment with a bodily substance. The felonious assault charge was later dismissed by the State. Ms. Johnson was also charged in Case

No. 18CR0070 with assault on a corrections officer and harassment with a bodily substance. The cases were tried together and, following a jury trial, she was found guilty of all three charges. The trial court sentenced her to three years of community control.

{¶4} Ms. Johnson filed two separate appeals in these cases, but upon motion, this Court consolidated the appeals.

{¶5} Ms. Johnson now appeals from her convictions and raises two assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY'S VERDICT AND FINDING OF "GUILTY" AS TO THE FELONY COUNT OF ASSAULT ON A CORRECTIONS OFFICER, IN VIOLATION OF R.C. 2903.13(A)(C)(4)(a), AND TWO FELONY COUNTS OF HARASSMENT WITH A BODILY SUBSTANCE IN VIOLATION OF R.C. 2921.38(B).

{¶6} In her first assignment of error, Ms. Johnson argues that the State failed to present sufficient evidence that (1) she "knowingly" assaulted a corrections officer and (2) she caused or attempted to cause the officers to come into contact with her spit or saliva "with intent to harass, annoy, threaten, or alarm [them]." We disagree with both propositions.

{¶7} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State*

*v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

<u>Assault on a Corrections Officer</u>

{¶8} Ms. Johnson was convicted of assault under R.C. 2903.13(A), which states: "No person shall knowingly cause or attempt to cause physical harm to another * * *." "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Because she assaulted a corrections officer at the Medina County Jail while under arrest and in custody, the offense was enhanced to a felony of the fifth degree under R.C. 2903.13(C)(4).

{¶9} Ms. Johnson argues that the State failed to present sufficient evidence to establish the "knowingly" mens rea for assault on a corrections officer. She claims that she did not knowingly act because she had no control over her actions, as she suffers from mental health issues, specifically post-traumatic stress disorder ("PTSD"). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "'[W]hether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself.'" *State v. Celli*, 9th Dist. Summit No. 28226, 2017-Ohio-2746, ¶ 18, quoting *State v. Huff*, 145 Ohio App.3d 555, 563 (1st Dist.2001).

{¶10} Deputy Tracy Easterday of the Medina County Sheriff's Office testified at trial, and his body cam video confirms, that Ms. Johnson made multiple threats of physical violence toward officers while he transported her to the jail on January 5, 2018. In the video, apart from

spitting on the window divider and making multiple threats to also spit on the officers once she is out of the cruiser, Ms. Johnson screams additional threats at the deputy with statements such as: "When I get out of here, I'm gonna bash you in your f**king face! * * * Watch me do it, watch me, I don't give a f**k!"; and "I'm going to bash your f**king head in, b***h! I said it: Stephanie Kassandra Johnson! Wait 'til we get to this f**king jail. I'm 'bout to make, cause a riot * * *." The video from Deputy Easterday's body cam was entered into evidence at trial.

{¶11} Deputy Bruce Cornelius testified that the officers had to restrain Ms. Johnson when she arrived at the jail because she was "being combative" and "threatening that she was going to kick [their] asses." Officer Mark Zullo also testified that Ms. Johnson had to be restrained in a restraint chair. She was then moved from the sally port into a foyer area outside of a holding cell, and a sergeant notified the officers that one of Ms. Johnson's leg restraints was loose. Officer Zullo testified that when he knelt down to retighten the leg restraint, Ms. Johnson kicked him in the side of his head. The officer testified that there was no question in his mind that Ms. Johnson was trying to kick him. The vicious kick is plainly visible on a video from a security cam located in the foyer, which was entered into evidence. In Deputy Easterday's body cam video, Ms. Johnson can also be heard saying, "That's what you get, b***h" after kicking Officer Zullo in the head. Multiple officers quickly re-secure her leg, and when she is wheeled into the nearby holding cell she can be heard in the body cam video saying, "That's what you get, boy, doughboy." Officer Zullo testified that the kick to his head smashed his hearing aid into many pieces and hurt him, causing his ear to bleed and then swell up for a couple days. Pictures of his injured ear and his shattered hearing aid were entered into evidence. Because the hearing aid was shattered while it was still inside his ear, he further testified that its jagged edges cut up the inside of his ear. He testified that the kick also affected his memory, as he initially

believed he was kicked while still in the sally port area, until he later watched the video of the incident and realized it actually happened in the foyer.

{¶12} Ms. Johnson relies solely on her own testimony at trial to assert that she was off of her medications to wit: lithium and Seroquel at the time of her arrest, following a brief stay in a "mental hospital." She testified that she suffers from PTSD, her mental state during these incidents "wasn't good[,]" and she had no control over her emotions or actions. She therefore argues on appeal that this mental illness prevented her from having the requisite mens rea for assault on a corrections officer. We note that while Ms. Johnson initially pled not guilty by reason of insanity ("NGRI") to the felonious assault charge, the trial court ordered and reviewed competency and sanity evaluations, and it later found that she was: (1) not suffering from a severe mental disease or defect at the time of the offense; and (2) competent to stand trial. Regardless, the felonious assault charge was ultimately dismissed, and Ms. Johnson did not plead NGRI to the assault on a corrections officer and harassment with a bodily substance charges. Had she raised this affirmative defense below, she would have borne the burden of proving that her mental illness was so severe as to negate the mens rea element of the charge. *See Avon Lake v. Charles*, 9th Dist. Lorain No. 07CA009117, 2008-Ohio-998, ¶ 24, citing *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 64; R.C. 2901.05(A); R.C. 2901.01(A)(14).

{¶13} We determine that Ms. Johnson's argument on appeal is essentially one of diminished capacity. The Supreme Court of Ohio, however, has stated that "'[t]he partial defense of diminished capacity is not recognized in Ohio.'" *Id.* at ¶ 25, quoting *State v. Wilcox*, 70 Ohio St.2d 182 (1982), paragraph one of the syllabus. *See also State v. Wong*, 9th Dist. Summit No. 27486, 2016-Ohio-96, ¶ 11. Regardless, after viewing the evidence in a light most favorable to the prosecution, this Court concludes that the State presented sufficient evidence, if

believed, to establish that Ms. Johnson knowingly assaulted Officer Zullo. The jury could reasonably infer Ms. Johnson's state of mind from the surrounding circumstances in this case. Ms. Johnson's words and actions are recorded on video, including a vulgarity-laced tirade in Deputy Easterday's cruiser, in which she spits on the window divider and repeatedly warns him that she is going to spit on and physically attack the officers once at the jail. She admitted on cross-examination to laughing out loud when that video was being played during the trial. She explained that one particular profane comment she made to the deputy was funny to her. Her combative and belligerent behavior at the jail necessitated the use of both a spit mask and a restraint chair. After she successfully freed her left leg from its restraint and violently kicked Officer Zullo in the head, she twice verbally taunted him over the assault. Based on our review of the record and the evidence presented, we conclude that the jury could have reasonably determined the knowingly mens rea of assault on a corrections officer was proven beyond a reasonable doubt.

<u>Harassment with a Bodily Substance</u>

{¶14} Ms. Johnson was also convicted of two counts of harassment with a bodily substance under R.C. 2921.38(B), which states:

> No person, with intent to harass, annoy, threaten, or alarm a law enforcement officer, shall cause or attempt to cause the law enforcement officer to come into contact with blood, semen, urine, feces, or another bodily substance by throwing the bodily substance at the law enforcement officer, by expelling the bodily substance upon the law enforcement officer, or in any other manner.

{¶15} Ms. Johnson argues that the State failed to present sufficient evidence to establish the requisite mens rea for these offenses, i.e., that she caused or attempted to cause the officers to come into contact with her spit or saliva "with intent to harass, annoy, threaten, or alarm [them]." "In the context of culpable mental states, 'intent' and 'purpose' are synonymous." *State v.*

*Miller*, 8th Dist. Cuyahoga No. 93731, 2010-Ohio-4347, ¶ 4, citing *White v. Maxwell*, 174 Ohio St. 186, 188 (1962). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Purpose can be established by circumstantial evidence and may be ascertained from the surrounding facts and circumstances of the case." *North Ridgeville v. Reichbaum*, 112 Ohio App.3d 79, 85 (9th Dist.1996).

{¶16} Deputy Shane Sams testified at trial that, on January 6, 2018, he was a supervisor at the Medina County Jail, where Ms. Johnson was incarcerated. The deputy overheard Ms. Johnson in her cell getting upset over her car keys, but when he approached her and told her he could not retrieve her keys she became more upset and was yelling and spitting at the window, so he left the area to allow her some time to cool down. He testified that Ms. Johnson later refused her medication and threw a cup of water on a nurse. The deputy further observed Ms. Johnson screaming and spitting at the door. Per jail policy, Ms. Johnson had to be observed actually taking her medications. Because this had not occurred, however, Deputy Sams had her face the back wall, so she could be secured and her cell could be searched for her missing medications, which she now claimed she had already taken. While being held against the wall, Deputy Sams testified that Ms. Johnson began to kick at him and spit. According to the deputy, Ms. Johnson ultimately spit on his uniform. They then had to put another spit mask on her and restrain her in a chair again, and Deputy Sams testified:

> As we were securing her in the restraint chair, she continues to yell and resist as well as spit. Due to having to be so close to her while restraining her, she was able to spit through the mask several times – five times that I can remember – hitting me on the side of my face two or three times all over my issued uniform during the course of the restraining.

{¶17} In a separate incident, Sergeant Jaron Detchon testified that, on January 10, 2018, he escorted Ms. Johnson out of her cell to allow her to make a phone call. On the way back to her cell, Ms. Johnson asked another officer ("Officer Ryan") about either her mother or her car keys, and then became upset and started struggling. Officer Ryan was forced to carry her back to her cell. Sergeant Detchon testified that Ms. Johnson was threatening to head-butt them and, once they reached her cell, she turned to him and "spit across [his] face." Ms. Johnson's restraints were removed once she was in her cell, but as Sergeant Detchon was backing out of her cell, he testified that she got up and spit on him one more time, which landed on his shirt.

{¶18} Once again, Ms. Johnson's argument that a mental illness prevented her from having the requisite mens rea for these offenses is essentially a diminished capacity argument, which is not a recognized defense in Ohio. *See Charles* at ¶ 25; *Wong* at ¶ 11; *Wilcox* at paragraph one of the syllabus. Moreover, after viewing the evidence in a light most favorable to the prosecution, this Court concludes that the State presented sufficient evidence, if believed, to establish that Ms. Johnson spit on both Deputy Sams and Sergeant Detchon with intent to harass, annoy, threaten, or alarm them. The jury could again reasonably infer Ms. Johnson's state of mind from the surrounding circumstances in this case. Several officers testified as to Ms. Johnson's behavior during three incidents within the same week. She consistently acted belligerent and disrespectful toward the officers by threatening them, spitting on windows and doors, kicking an officer in the head, and spitting on several other officers, including Deputy Sams and Sergeant Detchon. She was forced to wear spit masks on more than one occasion and had to repeatedly be restrained for being out of control. Based on our review of the record and the evidence presented, we conclude that the jury could have reasonably determined that the

State proved beyond a reasonable doubt the intent or purpose required for harassment with a bodily substance.

{¶19} Accordingly, Ms. Johnson's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE DEFENDANT'S CONVICTIONS OF ONE COUNT OF FELONY [A]SSAULT ON A CORRECTIONS OFFICER, IN VIOLATION OF R.C. 2903.13(A)(C)(4)(a), AND TWO FELONY COUNTS OF HARASSMENT WITH A BODILY SUBSTANCE, IN VIOLATION OF R.C. 2921.38(B), WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶20} In her second assignment of error, Ms. Johnson contends that her convictions were against the manifest weight of the evidence.

{¶21} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶22} Although she claims her convictions are against the manifest weight of the evidence, Ms. Johnson does not present or develop any meaningful argument in support of this claim. She only repeats her sufficiency claims and then broadly states: "Even assuming

*arguendo* that the evidence presented at trial concerning the essential elements * * * was somehow sufficient, an independent re-weighing of that same evidence demonstrates the evidence weighs heavily against Ms. Johnson's convictions * * *." "[S]ufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. This Court will not develop a manifest weight argument on Ms. Johnson's behalf. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32.

{¶23} Accordingly, Ms. Johnson's second assignment of error is overruled.

III.

{¶24} Ms. Johnson's first and second assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.