[Cite as *State v. Callahan*, 2024-Ohio-2390.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 23CA012027 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| PATRICK M. CALLAHAN | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 22CR106751 |

DECISION AND JOURNAL ENTRY

Dated: June 24, 2024

---

FLAGG LANZINGER, Judge.

{¶1} Patrick Callahan appeals his convictions from the Lorain County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} Callahan was charged with two counts of assault, two counts of harassment with a bodily substance (saliva), one count of resisting arrest, and one count of disorderly conduct. Callahan pleaded not guilty and the matter proceeded to a bench trial.

{¶3} At trial, the State presented testimony from three witnesses: two police officers from the Avon Lake Police Department, and one firefighter/paramedic from the Avon Lake Fire Department. The testimony at trial indicated that the police responded to a bar in Avon Lake on June 9, 2022, around 6:00 p.m. after dispatch received a call that a bar patron was causing a disturbance and threatening other bar patrons. When officers arrived, they learned that Callahan

had jumped over the patio fence instead of using the patio gate to enter the patio, which upset some of the bar patrons. Callahan and the bar patrons then argued, and someone called the police.

{¶4}  When the officers arrived, they asked Callahan to step to the side so that they could hear his version of events. Callahan told the police that he had done nothing wrong, and that he had been pushed to the ground by a bar patron. Callahan informed the officers that he had a prosthetic leg, and that he jumped over the patio fence because he did not see the gate. The officers testified that they could smell a strong odor of alcohol on Callahan's person, that he was slurring his speech, that he appeared intoxicated, and that he was uncooperative.

{¶5}  The State played the bodycam footage from the two officers that testified at trial. That footage, along with the officers' testimony, indicated that Callahan became increasingly hostile and belligerent. Callahan began swearing, making threats, and using profanity toward the officers. Callahan refused to identify himself or otherwise cooperate with the officers. The officers repeatedly told Callahan that they just wanted to take him home, but Callahan continued to refuse to cooperate.

{¶6}  The officers eventually decided to issue Callahan a citation for disorderly conduct. Meanwhile, Callahan's belligerent behavior continued to escalate. As the officers tried to handcuff Callahan, he physically resisted and claimed the officers were assaulting him. The officers called EMS, who arrived shortly thereafter. Callahan confirmed with the officers that he wanted to go to the hospital.

{¶7}  As EMS was attempting to put Callahan on a stretcher, Callahan forcefully spit toward the officers and the paramedics. An officer put a spit mask over Callahan's head, and EMS transported him to the hospital while the officers followed.

{¶8}    After arriving at the hospital, the medical staff removed the spit mask. Callahan was uncooperative with the medical staff and refused treatment.  Callahan continued cursing, making threats, and using profanity toward the officers.  Callahan then started to spit toward the officers again.  A spit mask was put back on Callahan's head, and the medical staff put restraints on Callahan's wrists and ankle.  Both of the testifying officers, as well as the firefighter/paramedic, testified that Callahan's spit made contact with their person at least once.  One of the officers also testified that Callahan threatened to kill him and his entire family, which was corroborated by that officer's bodycam footage.

{¶9}    Callahan's brother eventually arrived at the hospital and attempted to calm Callahan down so that he could take him home.  When Callahan's brother was unable to calm Callahan down, he told the officers that he was not willing to take Callahan home.  The medical staff eventually gave Callahan a sedative, and the officers transported him to jail.

{¶10}  Callahan testified on his own behalf at trial.  Callahan admitted that he had been uncooperative and argumentative, and explained that he was emotional the day of his arrest.  Callahan maintained that he never intentionally spit at anyone, and that he wished he had acted differently.

{¶11}  After the State rested at trial, defense counsel moved for acquittal under Crim.R. 29.  The trial court granted defense counsel's motion with respect to the two charges for assault.  At the close of the defense's case, the trial court found Callahan guilty of the remaining charges.

{¶12}  The trial court sentenced Callahan to two years of community control on the counts for harassment with a bodily substance (a fifth-degree felony), with the first 180 days of each count to be served consecutively at the Lorain County Jail.  The trial court sentenced Callahan to 90 days in jail on the count for resisting arrest, and 30 days in jail on the count for disorderly conduct, both

of which were to be served concurrently with the jail term imposed for the counts for harassment with a bodily substance. Callahan now appeals, raising two assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

DEFENDANT WAS UNCONSTITUTIONALLY DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

{¶13} In his first assignment of error, Callahan argues that his defense counsel rendered ineffective assistance. For the following reasons, this Court disagrees.

{¶14} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Callahan must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, Callahan must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138. "This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong." *State v. Carter*, 9th Dist. Summit No. 27717, 2017-Ohio-8847, ¶ 27.

{¶15} Callahan claims that his defense counsel rendered ineffective assistance because his defense counsel questioned an officer about the threats Callahan made to the bar patrons on cross-examination, yet the State had not produced evidence regarding those threats on direct

examination. According to Callahan, the State would have been unable to prove its charge of disorderly conduct but for his defense counsel's cross-examination of the officer regarding the threats.

{¶16} R.C. 2917.11(B)(1), under which Callahan was charged, governs disorderly conduct and provides that no voluntarily intoxicated person shall:

> In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if the offender were not intoxicated, should know is likely to have that effect on others[.]

That section of the disorderly conduct statute does not require proof that Callahan threatened anyone. *Compare* R.C. 2917.11(A)(1) ("No person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]"). Thus, even if the record supported Callahan's assertion that the only evidence of him threatening anyone was elicited by his defense counsel on cross-examination (which it does not), he has failed to establish that this affected the outcome of the trial. Accordingly, Callahan has failed to establish a claim for ineffective assistance. *Strickland*, 466 U.S. at 687; *Carter*, 2017-Ohio-8847, at ¶ 27. Callahan's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE EVIDENCE WAS INSUFFICIENT TO CONVICT ON HARASSMENT WITH A BODILY SUBSTANCE.

{¶17} In his second assignment of error, Callahan argues that the State failed to present sufficient evidence in support of his convictions for harassment with a bodily substance. This Court disagrees.

{¶18} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.* The trier of fact is entitled to rely on direct, as well as circumstantial evidence. *See id.*

{¶19} R.C. 2921.38(B), under which Callahan was charged, provides that:

> No person, with intent to harass, annoy, threaten, or alarm a law enforcement officer, shall cause or attempt to cause the law enforcement officer to come into contact with * * * [a] bodily substance * * * by expelling the bodily substance upon the law enforcement officer * * *.

This Court has explained the "intent" requirement under R.C. 2921.38(B) as follows:

> "In the context of culpable mental states, 'intent' and 'purpose' are synonymous." * * * "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Purpose can be established by circumstantial evidence and may be ascertained from the surrounding facts and circumstances of the case." * * *.

*State v. Johnson*, 9th Dist. Medina No. 18CA0070-M, 2019-Ohio-3314, ¶ 15.

{¶20} Callahan argues that the State failed to present sufficient evidence in support of his convictions for harassment with a bodily substance because "there [wa]s no testimony that any police officer was harassed, annoyed, threatened, or alarmed by [his] spitting." But the State did

not have to prove that the officers felt harassed, annoyed, or threatened by Callahan's spitting; the State had to prove that Callahan intended to "harass, annoy, threaten, or alarm a law enforcement officer * * *." R.C. 2921.38(B); *see Johnson* at ¶ 18.

**{¶21}** Here, the officers testified as to Callahan's belligerent behavior, which was captured on their respective bodycams. The officers' testimony, as well as the bodycam footage, reflects that Callahan was yelling, cursing, and threatening the officers throughout his interactions with them. The officers and the medical staff had to physically restrain Callahan with their bodies, which culminated in the medical staff putting restraints on Callahan's wrists and ankle, and giving him a sedative. The bodycam footage reflects that Callahan was belligerent and combative when he forcefully spit toward the officers. Each officer testified that Callahan's spit made contact with their person at least once. Viewing this evidence in a light most favorable to the State, the trial court could reasonably conclude that the State proved the essential elements of harassment with a bodily substance beyond a reasonable doubt. Callahan's second assignment of error is overruled.

III.

**{¶22}** Callahan's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

RICHARD E. HACKERD, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and MARK ANTHONY KOZA, Assistant Prosecuting Attorney, for Appellee.